NOGUERA et al. v. FUERTES.

(Circuit Court of Appeals, First Circuit. October 7, 1925.)

No. 1810.

1. **Appeal and error** ⬯1074(3)—**Error, if any, in statement in judgment that vendor was in possession at time of conveyance, held immaterial.**

In suit to recover land, error, if any, in statement by Supreme Court of Porto Rico that, when vendor sold land in question to complainant, latter left her in possession, was immaterial, in view of fact that, if vendor was not in actual physical possession, she had right to its possession at time of conveyance to complainant.

2. **Vendor and purchaser** ⬯212—**Refusal to apply statute of Porto Rico relating to rights of different vendees to whom same land is sold to contention as to effect of conveyance by person who had no title held not error.**

In action to recover land, where defendant's predecessor in title, as result of conveyance, did not acquire any title to land in question, but when he afterwards conveyed land to third person included part, if not the whole, of property in dispute, which gave rise to refusal by registrar to record sale as to excess of land above certain amount, refusal of Supreme Court of Porto Rico to apply Civ. Code Porto Rico, § 1376, providing that, if same real property is sold to different vendees, it shall belong to person acquiring it who first recorded it in registry, was not error.

3. **Vendor and purchaser** ⬯228(1)—**Purchaser, notified before purchase of adverse claim to part of property in question, held to have acted in bad faith.**

Where prospective purchaser of property was notified by owner of land, which had been wrongfully incorporated in such property, of true situation before purchase, his subsequent purchase was made in absence of good faith.

4. **Courts** ⬯406(1)—**Judgment of District Court and Supreme Court of Porto Rico in matter involving Porto Rican law should not be reversed, except on clear showing of error.**

Where both District Court and Supreme Court of Porto Rico have reached practically

same result on matter involving Porto Rican law, their judgment should not be reversed, except on clear showing of error.

Appeal from the Supreme Court of Porto Rico.

Action by Faustino Fuertes against Juan Noguera and others. From a judgment of the Supreme Court of Porto Rico, affirming a judgment for plaintiff, defendants appeal. Affirmed.

Howard L. Kern, of New York City (Armstrong, Keith & Kern, of New York City, on the brief), for appellants.

Arturo Aponte, Jr., of Humacao, Porto Rico, for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the Supreme Court of Porto Rico, in an action in which the plaintiff seeks to recover a parcel of land called "Cercado Maldonado," alleged to be in the possession of the defendants.

The following facts were found by the Supreme Court, which are in substantial accord with those found by the District Court:

"In 1903 Manuel Gonzalez Fernandez purchased the property called 'Cercado Maldonado,' containing 35.190 acres, from Santiago R. Palmer. Ten days later Gonzalez died, and was succeeded by his widow and children, who recorded their hereditary title to said property.. Shortly after this record was made the parties in interest proceeded to execute the will of their ancestor, and awarded this and other properties to Clementina Lugo y Calzada in settlement of her share. Finally, on October 2, 1912, Clementina sold to Faustino R. Fuertes all these properties, including the 'Cercado Maldonado' involved in this controversy. It is well to mention at this point that Palmer, who had sold Manuel Gonzalez the said 'Cercado Maldonado' property, gave Emilio Cuadra a power of attorney to sell Francisco Noya and wife a part consisting of one hundred acres, to be segregated from a property named 'Cercado Torres,' or 'Maizales.' Under this power of attorney Emilio Cuadra sold the spouses Noya the 100 acres in question, segregating the same from the 'Cercado Torres.' Now the property 'Cercado Maldonado' and 'Torres' were two distinct and separate properties, as shown by the registry, the plans, and the real facts. It is shown that, at the time of the purchase made by Manuel Gonzalez, as well as by Noya, all these properties were held by Faus-

tino R. Fuertes, and, when they proceeded to segregate the 100 acres for Noya, the required number was taken from the 'Cercado Torres' property; the act of segregation being performed by Surveyor Juan A. Davila. At such time all the properties were still held under lease by Fuertes, and he did not deliver Noya's property to the new lessee, Gustavo Preston, until about the year 1904 or 1905, and when he surrendered possession of this property, he did not deliver the 'Cercado Maldonado,' which he retained for some time longer, but only the 100 acres. A little later Faustino R. Fuertes also delivered the properties still in his possession belonging to the Gonzalez succession as a consequence of the death of Manuel Gonzalez, his predecessor in interest. This was about the year 1905. In 1912 plaintiff, Faustino R. Fuertes, bought all these properties. He continued, however, to lease them to their former owners. He had no need to inspect them, since they were known to him for more than 20 years, and when, in 1913, he proceeded to enter into possession of said properties, he found that 'Cercado Maldonado' was not among them, but was in possession of the Central San Cristobal, against which proceedings for a receivership were then being instituted in the federal court.

"It is well to state here that the property belonging to Noya was sold by him to the Central San Cristobal in 1911; but, instead of 100, the sale involved 130-odd acres, namely, the acres contained in the 'Cercado Maldonado' property, and the 100 acres belonging to Noya. This gave rise to the refusal of the registrar of Humacao to record the sale in favor of the Central San Cristobal as to the excess, the records of the registry stating clearly and distinctly 'that the admission to record of the excess of 30-odd acres was denied, because these did not lie within the same boundaries, and because the difference was too great to be overlooked.'

"Subject to the refusal of the registrar of property to record the excess of 30-odd cuerdas, and a showing of 98 and a fraction cuerdas, after deducting a small segregation of one cuerda and a fraction of another, the Noya property of the Central San Cristobal was sold at public auction to the Naguabo Sugar Company, predecessor in interest of the Fajardo Sugar Growers' Association. * * *"

"In 1916 the plaintiff learned that Noguera contemplated the purchase of the Noya property, and thereupon by his attorneys, Dexter & Aponte, wrote, notifying

Noguera of the true state of affairs, and advising him that he was the owner of the Maldonado property, which had been wrongfully incorporated in the 'Noya' property, and that, if he persisted in making the purchase, he would do so at his risk and peril, and could not invoke or rely upon the defense that he was a third person or innocent purchaser.

"On December 27, 1916, or one week after Noguera received the letter from Dexter & Aponte, the said Noguera purchased 60 cuerdas of the Noya' property—or what they called the southern section of the highway—from the Fajardo Sugar Growers' Association.

"In making this conveyance the parties assumed that the 'Noya' property contained 130-odd cuerdas and that the southern section of the road contained 60-odd cuerdas, whereas the fact is that, according to the registry, it contained a total area of only 98.86 cuerdas, and the section to the south of the highway an area of only 40 cuerdas.

"The defendants rest their defense on the contention that the 'Cercado Maldonado' never existed, and that therefore the complaint cannot prosper.

"But the fact remains that according to the certificate of the registry of property and the old plan of the properties the 'Cercado Maldonado' has always existed, and has always possessed natural boundary lines not open to dispute, namely, on the east an inlet and the Viejo river; on the south the river Viejo; on the west, a small inlet; and on the north the property Fe, formerly owned by Pereyo, from which it is divided by a road, now a highway in process of construction. And these natural boundaries of water, except on one side, are the ones taken or relied on by the defendants themselves in their statements of identification."

The Supreme Court of Porto Rico has affirmed the judgment of the District Court, modified to show that the title of the defendants is not to be destroyed, except so far as it conflicts with the title of the complainant, and, summing up its conclusion, it states:

"The complainant shows a title duly recorded in 1902. He showed the defendants in possession of the same, and a holding against complainant, and such adverse holding was continued despite all sorts of notice. The defendants have not satisfied us that there is any mistake in the origin of complainant's title, or that they have a superior claim."

The language used in the opinion may be unfortunate, and not strictly accurate, and might imply that the burden was upon the defendants to show that they had a superior claim; but a reading of the whole opinion makes it clear that the court did not place the burden upon the defendants of proving a superior claim, but that it made its finding upon the evidence, which showed that the plaintiff had sustained the burden thrown upon him of proving a superior claim.

[1] The first assignment of error alleges that the Supreme Court was in error in finding that Clementina Lugo, widow of Gonzalez, was in possession of the 'Cercado Maldonado' when he purchased it. This assignment seems to be directed to that part of the opinion of the Supreme Court where it is stated:

"But the record clearly shows, and the court so found, that when Dona Clementina Lugo sold to the complainant, in 1912, the latter left her in possession, giving her a lease to the said land which was to expire in 1914. Now when a person buys a piece of land, and immediately leases the same to the vendor, the civil possession is transferred from the vendor to the purchaser. The continued possession of the lessee is the possession of the lessor."

If the vendor was not in actual physical possession of "Cercado Maldonado," the evidence discloses that she had the right to its possession at the time of its conveyance to the plaintiff; and if the court was in error in stating that she had possession, we think it is immaterial.

[2] It is also assigned as error that the Supreme Court made a wrong application of or did not apply at all, section 1376 of the Civil Code of Porto Rico, which is as follows:

"Sec. 1376. If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possession thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith."

While this section might be helpful in determining ownership, where two parties claim the same land through conveyances from the same grantor, we think it does not have application to the present case. The evidence discloses that when Noya received a deed of 100 acres which was segre-

gated from "Cercado Torres," he did not claim to have received title to any part of "Cercado Maldonado," but, when he afterwards sold the property which he had acquired to the San Cristobal Central, a survey was made, showing that the Central claimed that he had conveyed to it more than 130 acres. Witness testified that he had never been in possession of the property and could not give its boundaries. The same land was surveyed again, when it was conveyed by the San Cristobal Central to the Fajardo Sugar Growers' Association, and found to contain 109 acres. The surveyor who made the survey when 100 acres was segregated from "Cercado Torres" testified that, when he made this segregation and his plan, he was shown a plan which had been offered in evidence and purported to have been made in 1868, which plan included "Cercado Maldonado," "Cercado Torres," and other properties, and that the "Cercado Maldonado" was shown to be a property distinct from the "Cercado Torres," from which he made the segregation of 100 acres.

It appears, therefore, that Noya, the predecessor in title of the defendant, did not receive title to any of the land included within "Cercado Maldonado"; but, when he afterwards conveyed it, in 1911, to the San Cristobal Central, he included part, if not the whole, of the "Cercado Maldonado" property, which gave rise to a refusal by the registrar to record the sale as to the excess above 100 acres, the records of the registry stating clearly and distinctly "that the admission to the record of the excess of 30-odd acres was denied because these did not lie within the same boundaries, and because the difference was too great to be overlooked."

[3] If Noya had no title to any part of "Cercado Maldonado," he could convey none, and there was no error in the refusal of the Supreme Court to make application of section 1376 of the Civil Code. Nor do we think there was any error in the finding of the Supreme Court that there was an entire absence of good faith in the purchase by Noguera of the land in question, in view of the notice which had been given him before his purchase.

[4] As both the District Court and the Supreme Court of Porto Rico have reached practically the same result, and the matter is one involving Porto Rican law, their judgment should not be reversed by us, unless we are convinced that they are clearly wrong. In this case we are convinced that they are clearly right. The entry therefore must be:

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee in this court.